UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE DIMANCHE, | |
| Plaintiff, | C.A. No.: |
| v. | |
| MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, WILLIAM MCCLELLAN, STEPHANIE BRADE, SHERYL REGISTER, MAXINE BELL, FRED OLSON AND CHERYL ANDERSON | |
| Defendant. | |

## COMPLAINT

Plaintiff, Michelle DiManche, hereby files this complaint to recover for her termination based on race discrimination.

## PARTIES

1. Michelle DiManche is an individual who resides in Hyde Park, Massachusetts.

2. Massachusetts Bay Transportation Authority is an entity with a principal place of business located at Ten Park Plaza, Suite 4810, Boston, Massachusetts.

3. William McClellan is an individual who is an employee of the "MBTA."

4. Stephanie Brade is an individual who is an employee of the "MBTA."

5. Sheryl Register is an individual who is an employee of the "MBTA."

6. Maxine Bell is an individual who is an employee of the "MBTA."

7. Fred Olson is an individual who is an employee of the "MBTA."

8. Cheryl Anderson is an individual who is an employee of the "MBTA."

## JURISIDICTION AND VENUE

9. Jurisdiction over this matter exists pursuant to 28. U.S.C. § 1331.

10. Venue is appropriate pursuant to 28 U.S.C. § 1392 (b).

## ALLEGATIONS

11. Ms. Dimanche worked as the operator MBTA green line and other trains. She had worked for the MBTA for thirteen years.

12. She had done a very good job for the MBTA.

13. The MBTA, however, subjected Ms. Dimanche to racial discrimination as a means to humiliate and ultimately terminate her.

14. In November 2011, two high ranking managerial co-workers, Stephanie Brade and Maxine Bell, cursed and swore at Ms. Dimanche.

15. They degraded and embarrassed her through their demeaning and insulting comments.

16. Ms. Dimanche then reported the conduct to her supervisor, Fred Olson, who is white. She asked that he address the comments.

17. Mr. Olson ignored Ms. Dimanche entirely. He took no action as to the two women who had uttered the comments.

18. Instead, he caused Ms. Dimanche to proceed to the clinic escorted by MBTA police.

19. The discrimination then intensified.

20. On December 10, 2011, Cheryl Anderson, Ms. Dimanche's supervisor, who also is white, assigned her to overtime on December 10, 2011.

21. Ms. Dimanche showed up at 7:00 p.m. to work overtime.

22. Ms. Anderson then laughed at Ms. Dimanche and told her that the overtime was for December 11, 2011 not December 10, 2011. She continued laughing and said "I got you."

23. Ms. Anderson clearly had provided the information to trick Ms. Dimanche to come in on the wrong day.

24. Ms. Dimanche then wrote a complaint as to what had occurred.

25. In retaliation, the MBTA suspended Ms. Dimanche for five days without pay.

26. On January 25, 2013, a fellow operator claimed that Ms. Dimanche had assaulted her. That claim had been false.

27. No evidence of any assault occurred because Ms. Dimanche never engaged in any such actions. The co-worker had been asked to make the claim only as part of an effort to drive Ms. Dimanche out of the MBTA.

28. The MBTA management, however, then used this trumped-up claim as part of its fabricated effort to discharge Ms. Dimanche.

29. The individual who terminated her, William McClellan, previously had been accused of discriminatory conduct as to Ms. Dimanche on the basis of race.

30. The case resolved in favor of Ms. Dimanche.

31. The individual who terminated her in January 2013 did so only because of Ms. Dimanche's race.

32. This action is just part of a scheme which has been implemented to drive Ms. Dimanche out of the MBTA.

33. Examples of other discriminatory conduct includes suspending Ms. Dimanche in April 2012 as to an incident in which she played no role.

34. Imposing other wrongful and discriminatory conduct as to her when no grounds to do so existed.

35. For example, Mike McPhee, a white employee, was caught sleeping three times while operating the trolley. After the second time, he became a Customer Service Agent. Approximately six months later, he became back to work driving trolleys on the green line and was caught sleeping again. Currently he works as a car cleaner for the MBTA in Forest Hills.

36. Annie Citroni, Tim Logan, and Alfred de Frederico are all white employees. They all had trolley on trolley collisions and are still working. Trolley on trolley collisions are grounds for automatic dismissals.

37. Jennifer Olson Holbrook, a white employee, has been on a Back to Work agreement four times, and she is still working for the MBTA.

38. In November 2010, a white, male Operator by the name of Guy Castoldi brought a gun on the green line property and pointed it at three operators. These operators were terrified and left work on stress. Mr. Castoldi remained employed by the MBTA.

39. This conduct is consistent with discriminatory conduct ongoing as to numerous African American employees. Attached is an article noting such discrimination and efforts to cease the activity.

### Count I
### (Violation of 42 U.S.C. § 1981 Racial Discrimination)

40. Plaintiff incorporates the allegations of Paragraphs 1 through 39 as if fully set forth herein.

41. The MBTA terminated Ms. Dimanche only because he is an African American.

42. No legitimate or justifiable business reason existed to warrant termination.

43. As a result of its discrimination, Ms. Dimanche has suffered loss of income and other damages.

## Count II
### (Racial Discrimination; Mass. Gen Laws Ch. 151B, § 4)

44. Plaintiff incorporates the allegation of Paragraph 1 through 43 as if fully stated herein.

45. Defendants subjected Ms. Dimanche to racial harassment and discrimination;

46. As a result, Ms. Dimanche has suffered loss of income and other damages.

## Count III
### (Intentional Infliction of Emotional Distress)

47. Ms. Dimanche incorporates the allegations of Paragraph 1 through 46 as if fully set forth herein.

48. Defendant had a duty not to impose emotional distress on plaintiff.

49. It breached that duty.

50. Defendant did so through intentional and outrageous acts which it knew would cause extreme emotional distress.

51. Defendants did so knowingly or with reckless disregard as to causing emotional harm to Ms. Dimanche.

52. As a result, Ms. Dimanche has suffered severe emotional distress and physical trauma which includes loss of sleep, nausea, crying, anxiety, depression, and other physical injury.

53. Accordingly, Ms. Dimanche is entitled to recovery of an amount to be determined at trial.

WHEREFORE, Ms. Dimanche prays that the Court:

1. Enter judgment in favor of Ms. Dimanche and against Defendant on Count I in an amount to be determined at trial.

2. Enter judgment in favor of Ms. Dimanche and against Defendant on Count II in an amount to be determined at trial.

3. Enter judgment in favor of Ms. Dimanche and against Defendant on Count III in an amount to be determined at trial.

4. Award Ms. Dimanche her attorney's fees.

5. Award Ms. Dimanche interest and costs, which include attorney's fees.

6. Award such other and further relief as the court deems appropriate.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

MICHELLE DIMANCHE,

By her attorney,

LAW OFFICE OF
CHRISTOPHER J. TROMBETTA


/s/ Christopher J. Trombetta
Christopher J. Trombetta (BBO No. 556923)
190 Chauncy Street, Suite 101
Mansfield, MA  02048
(508) 339-5900
chris@trombettalaw.com

Dated:  January 8, 2015